UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  ROBERT JOSEPH WOODS, JR.,   :     Case No. 15-12063REF

       Debtor             :     Chapter 13

------------------------------------

ANN MARIE WOODS, now known as   :

Ann Marie Pedone,              :

       Plaintiff         :

        vs.          :     Adv. No. 17-141

ROBERT JOSEPH WOODS, JR.,     :

       Defendant     :

# MEMORANDUM  OPINION

# I. INTRODUCTION

Before me for disposition on a consolidated record is the dispute about an overall debt obligation in the amount of $54,500 arising out of the settlement of a domestic relations matter between Plaintiff Ann Marie Woods ("Plaintiff" or "Wife"), and Debtor/Defendant, Robert J. Woods ("Defendant" or "Husband"). Plaintiff and Defendant were previously married. To resolve the dispute, the parties have engaged in state court litigation and Plaintiff initiated both this adversary proceeding by filing the complaint and this claim litigation by filing her claim against Defendant. Defendant opposed the adversary complaint and objected to the claim.

Plaintiff seeks in the adversary proceeding to have the $54,500 owed to her by Defendant declared nondischargeable as a "domestic support obligation" ("DSO") under Section 523(a)(5) of the Bankruptcy Code (the "Adversary Proceeding"). Defendant is attempting to limit the nondischargeability of the $54,500 that he owed to Plaintiff by answering the complaint in the Adversary Proceeding and by filing his objection to the claim that Plaintiff filed in his main bankruptcy case (the "Claim Objection"). I conducted a consolidated trial/hearing on both the Adversary Proceeding and the Claim Objection on December 6, 2017, after which I directed the parties to file briefs, which have now been filed. The matter is ready for disposition.

I will enter judgment in the Adversary Proceeding in favor of Plaintiff in part and in favor of Defendant in part, finding and concluding that $31,500 of the $54,500 debt owed by Defendant to Plaintiff is nondischargeable under Section 523(a)(5) as a DSO. The remainder of the debt ($23,000) is dischargeable because it is in the nature of a property settlement. I will sustain the Claim Objection, finding and concluding that Plaintiff's claim was not filed on time. I will also deny without prejudice Plaintiff's request for additional attorneys' fees allegedly due to Plaintiff from Defendant.

# II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

## <u>A. Property Settlement Agreement and State Court Order</u>

Plaintiff and Defendant were married on July 20, 1991. <u>See</u> Plaintiff's Exhibit 1, Property Settlement Agreement between Plaintiff and Defendant executed on January 15, 2015 (the "Agreement"), ¶1. Three children were born during the marriage. Defendant was self-employed during the marriage, operating an insulating spray business. Plaintiff did not work outside the home during the marriage, opting instead to raise the parties' children. She assisted Defendant, however, with operation of the insulating spray business.

The parties separated in November 2012 and were divorced on February 2, 2015. <u>See</u> Plaintiff's Exhibit 2, July 1, 2016 Order entered by the Honorable Michele Varricchio of the Lehigh County Court of Common Pleas in <u>Woods v. Woods,</u> No. 2012-FC-1182 (the "July 1, 2016 Order"), note 1. With the exception of a three-month period in 2012, Defendant had primary physical

custody of the parties' children from the time the parties' separated until they executed the Agreement on January 15, 2015.[1]

This dispute is based upon the Agreement, which triggers my examination of the language of the Agreement, the financial status of the parties when the Agreement was executed, and the functions served by the allocation of assets through the Agreement.

Paragraph 30(b)(ii) of the Agreement provides:[2]

*Wife shall receive an initial payment of $2500 at the time of signing. Followed by a payment of $10,000 within 30 calendar days. One year from the date of signing a second $10,000 payment will be due, followed by a third $10,000 payment due 2 years from date of signing.*

Paragraph 33 of the Agreement is difficult to follow and is self-contradictory. I set forth Paragraph 33 here in the format and structure used by counsel in the Agreement. Paragraph 33 provides:

*33. <u>Child Support.</u> The parties acknowledge that outstanding custody issues remain and both parties agree to refrain from filing a child support action with Lehigh County Domestic*

---

[1]    The parties stipulated at the beginning of the consolidated trial/hearing that they would limit the testimony to the intent of the parties at the time the Agreement was executed. For this reason, no evidence was presented concerning the custodial arrangements for the children after January 15, 2015. Such evidence, even if it were presented, would have been irrelevant to the question before me in the Adversary Proceeding, which is the intent of the parties at the time they executed the Agreement.

[2]    I have ignored and have not noted (with [sic] or otherwise) grammatical errors in the Agreement.

*Relations Section until those issues are resolved through Lehigh County Family Court, if ever. Any existing actions of Child Support/APL shall be discontinued immediately upon receipt of the divorce decree; documentation of such shall be delivered to both parties respective counsel.*

*Further, the parties agree that a child support application shall not be filed unless there is a significant change in circumstances. For the purpose of this agreement, a significant change in circumstances is:*

*a)    a change in income of 40% up or down of either party;*

*b)    a change in custody which persists over 2 months;*

*c)    the voluntary decision of one of the children to seek exclusive custody from one parent or the other.*

*Should the above-referenced requirements not be met, Wife's marital post-divorce alimony claims shall be reinstated. Wife shall be entitled to an additional $20,000 of post-divorce alimony to be paid following and continuing the above-referenced payment schedule (Wife is paid $10,000 in year 4 from the date of signing this Agreement and paid $10,000 in year 5 from the date of signing the Agreement). In the alternative these payments may be made in monthly installments, provided that the entire yearly due amount is paid within the year.*

*For the purposes of this agreement, the baseline value for Husband's income will be his 2012 tax filing, for the purpose of Wife it shall be her 2014 tax filing.*

Defendant paid Plaintiff the initial $2,500 that was due on January 15, 2015, the date that the parties executed the Agreement. He immediately thereafter defaulted under the Agreement when he failed and refused, on February 14, 2015, to pay Plaintiff the first $10,000 payment required to be paid under Paragraph 30(b)(ii). Instead, he filed the petition initiating this Chapter 13 case on March 26, 2015 and this litigation ensued.

5

On March 29, 2016, I granted Plaintiff's motion for relief from the automatic stay in Defendant's main bankruptcy case, thereby allowing both parties to proceed in state court to litigate and determine (but not enforce) the parties' rights and remedies under state law and the Agreement. On July 1, 2016, the state court judge entered the July 1, 2016 Order finding: (1) Husband breached Paragraph 30(b)(ii) of the Agreement by failing to pay Wife the two $10,000 installments that were then due;[3] (2) as a result of this breach, Husband was responsible under Paragraph 24 of the Agreement for Wife's reasonable attorneys' fees in the amount of $4,500; (3) Husband breached Paragraph 33 of the Agreement by filing a child support action prior to resolution of the parties' child custody dispute; and (4) as a result of his breach, Wife's post-divorce alimony claims were reinstated. See the July 1, 2016 Order, at pp. 1-2.

In her July 1, 2016 Order, the state court judge directed that Husband pay to Wife: (1) On or before July 15, 2016, $20,000 as equitable distribution pursuant to Paragraph 30(b)(ii), (2) on or before July 15, 2016, $4,500 in attorneys' fees pursuant to Paragraph 24; (3) on or before January 15, 2018, $10,000 as post-divorce alimony

---

[3] This $20,000 obligation represents the first two of the three $10,000 installment payments owed by Defendant to Plaintiff under Paragraph 30(b)(ii) of the Agreement. The state court judge did not address the third $10,000 installment payment owed under Paragraph 30(b)(ii), presumably because the third installment payment had not been due at the time she entered the July 1, 2016 Order. It is now due and will be accorded the same treatment as the initial $20,000 attributable to Paragraph 30(b)(ii), converting the $20,000 obligation into a $30,000 obligation.

pursuant to Paragraph 33; and (4) on or before January 15, 2019, $10,000 as post-divorce

alimony pursuant to Paragraph 33.[4]

# B.  Proceedings in Bankruptcy Court

Well before the stay relief order was entered, the bar date for filing claims in

Defendant's main bankruptcy case was set as October 15, 2015. Plaintiff failed to file her

claim until October 6, 2016, almost a full year later. Defendant opposed Plaintiff's claim

on May 2, 2017, by filing the Claim Objection.

On May 15, 2017, Plaintiff filed this Adversary Proceeding. On August 11,

2017, Defendant filed a motion for summary judgment (the "SJ Motion"). I granted the

SJ Motion in part and denied it in part on September 20, 2017. I granted Defendant's SJ

Motion with respect to Plaintiff's second and third claims for relief. Plaintiff's second

claim for relief requested that the debt be found nondischargeable under 11 U.S.C.

§523(a)(15). But Section 523(a)(15) applies only if a debtor is seeking a hardship

discharge under Section 1328(b) or when the case is proceeding under Chapter 7 and a

discharge is entered under 11 U.S.C. §727. Defendant is not seeking a hardship discharge

---

[4]    Defendant conceded a critical issue during the December 6, 2017 consolidated
trial/hearing, to wit: Defendant's obligation under Paragraph 33 of the Agreement, as ordered in
Paragraphs 4 and 5 of the July 1, 2016 Order, to pay to Plaintiff the two $10,000 installment
payments was intended by the parties to be in the nature of alimony. See FTR Audio Recording
of December 6, 2017 consolidated trial/hearing, at 2:35:41-53; 2:36:01-07. The obligation under
Paragraph 33, therefore, need not be further examined -- it is a DSO and is nondischargeable
under Section 523(a)(5).

and this case is not proceeding under Chapter 7, so I granted the SJ Motion eliminating Plaintiff's second claim for relief. I granted Plaintiff's third claim for relief, which requested that the debt be found nondischargeable under 11 U.S.C. §§523(a)(2)(A) and (B), because these sections are inapplicable to the facts of this case.

On the other hand, I denied Defendant's SJ Motion with respect to the first claim for relief, which requested that the debt be found nondischargeable as a DSO under Section 523(a)(5). Although the July 1, 2016 Order categorized the $10,000 obligations under Paragraph 30(b)(ii) as "equitable distribution," that categorization was not entitled to collateral estoppel/issue preclusion effect in this Adversary Proceeding. The July 1, 2016 Order does not state, or in any other way suggest, that the $10,000 payments constitute "equitable distribution" that are therefore not DSOs under the Bankruptcy Code.[5] The issues decided by the judge in her July 1, 2016 Order do not refer to the Bankruptcy Code or the dischargeability issues now before me. Collateral estoppel/issue preclusion, therefore did not apply to the state court judge's categorization of the $10,000 obligations as "equitable distribution." I therefore denied the SJ Motion as it pertained to the first claim for relief in this Adversary Proceeding.

---

[5]     Whether an obligation is in the nature of alimony, maintenance, or support for purposes of Section 523(a)(5) of the Bankruptcy Code is a question of federal, not state, law. Gianakas v. Gianakas (In re Gianakas), 917 F.2d 759, 762 (3d Cir. 1990).

# III. DISCUSSION

## A. Dischargeability of the Obligations in Paragraphs 30(b)(ii) and 24 of the Agreement Under Section 523(a)(5).[6]

Sections 523(a)(5) and 1328(a)(2) of the Bankruptcy Code, 11 U.S.C.

§§523(a)(5) & 1328(a)(2), make DSOs nondischargeable in Chapter 13 cases. A DSO is

defined in Section 101(14A) of the Bankruptcy Code as:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> (A) owed to or recoverable by--
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>> (i) a separation agreement, divorce decree, or property settlement agreement;

---

[6]   Defendant argues in his brief that Plaintiff's Section 523(a)(5) complaint must be dismissed because it was not timely filed. Defendant failed to raise this issue by motion or in his answer or at the consolidated trial/hearing, choosing instead to raise it for the first time in his post-trial/hearing brief. That procedural malady is coupled with the substantive rule that shows his argument is devoid of merit. As Fed. R. Bankr. P. 4007(b) expressly dictates, a complaint under Section 523(a)(5) may be filed at any time. Defendant's argument about an alleged late filing fails.

               **(ii)** an order of a court of record; or

               **(iii)** a determination made in accordance with applicable
               nonbankruptcy law by a governmental unit; and

**(D)** not assigned to a nongovernmental entity, unless that obligation is
assigned voluntarily by the spouse, former spouse, child of the debtor,
or such child's parent, legal guardian, or responsible relative for the
purpose of collecting the debt.

11 U.S.C. §101(14A).

The questions now focus on Defendant's obligations pursuant to

Paragraphs 30(b)(ii) and 24 of the Agreement to pay Plaintiff: (1) Three $10,000

installment payments over a three-year period and (2) Defendant's additional

obligation, under Paragraph 24 of the Agreement and as ordered in the July 1, 2016

Order, of $4,500 in attorneys' fees. Are those obligations, separately or together,

and fully or partially, (1) in the nature of alimony, maintenance, or support, and

therefore nondischargeable as DSOs or (2) alternatively, in the nature of property

settlements that are dischargeable in this Chapter 13?

To determine the answer, I must look beyond the labels attached to

the obligations in both the Agreement and the July 1, 2016 Order to determine their

true nature. <u>Gianakas v. Gianakas</u> (<u>In re Giankakas</u>), 917 F.2d 759, 762 (3d Cir.

1990). "A debt could be in the 'nature of support' under Section 523(a)(5) even

though it would not legally qualify as alimony or support under state law." <u>Id.</u>,

<u>citing</u> <u>in re Yeates</u>, 807 F.2d 874, 878 (10th Cir. 1986). As noted above, whether an

obligation is in the nature of alimony, maintenance, or support for purposes of

Section 523(a)(5) of the Bankruptcy Code is a question of federal bankruptcy, not

state, law. Gianakas, 917 F.2d at 762. As the Third Circuit Court has instructed at

length in Gianakas:

> We believe that whether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement. (Citations omitted.) That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.

> First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary. (Citations omitted.) However, it is likely that "neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." In re Wisniewski, 109 B.R. 926, 929 (Bankr. E.D. Wis. 1990). Therefore, the parties and the state courts may not have focused on whether a particular obligation was to serve as support or as a property settlement unrelated to support. (Citation omitted.) As the Pennsylvania Superior Court noted, even an obligation designated as property settlement may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution. Buccino, 397 Pa. Super. at ----, 580 A.2d at 18-19. In fact, "property division often achieves the same goal as alimony, i.e., support." Id.

> Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support. (Citation omitted.)

Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support. (Citation omitted.)

Id. at 762-63.[7]

---

[7]     This District's Chief Bankruptcy Judge Eric Frank recently addressed the typically fact-intensive approach to determining dischargeability of debt in his analysis of a different sub-section of Section 523(a). Price v. DeVos (In re Price), 573 B.R. 579, 596 n.19 (Bankr. E.D. Pa. 2017)(appeal pending). Judge Frank was faced with a determination of what constitutes a "hardship," whereas I am faced with a determination of what constitutes a DSO. Despite the different sub-sections under Section 523(a), the fact by fact approach remains the same. Judge Frank's analysis of his determination of what is a "hardship" follows:

The fact intensive nature of the §523(a)(8) inquiry and the varied outcomes suggest that prior decisions may have diminished value as legal precedent.

There are many areas of bankruptcy law where Congress apparently intended bankruptcy judges to weigh the evidence and utilize their experience and judgment to decide individual cases on a case by case basis. It does so by using terms that are inherently incapable of fine definition, such as "good faith," "substantial abuse," "undue hardship," and the like. Case law in such areas tends to identify "factors" that in reality are merely a checklist of relevant facts or issues to consider, none of which is dispositive. Perhaps such areas of bankruptcy law are best dealt with as in the civil system, with each judge reading and applying the statute and its underlying policies and principles to each factual situation that comes up, without regard to what the last judge did on different facts. Reported decisions in such areas serve little useful purpose, and in fact may be counterproductive.

In re Crater, 286 B.R. 756, 772 (Bankr. D. Ariz. 2002) (footnote omitted); see also A. Scalia, The Rule of Law As a Law of Rules, 56 U. Chi. L. Rev. 1175, 1180–81 (1989) (describing judicial decisions based on multiple factors as "amount[ing] to not so much pronouncing the law in the normal sense as engaging in the less exalted function of fact finding").

# 1. <u>Obligation To Pay the $10,000 Payments Pursuant to Paragraph 30(b)(ii)</u>

I turn first to the language and substance of the Agreement as directed in <u>Gianakas</u>. Paragraph 30 states that the parties agree to divide their financial accounts and assets as set forth therein and to relinquish any rights each may have to the other's assets. Paragraph 30(a) then lists the assets that Defendant will retain and Paragraph 30(b) lists the assets that Plaintiff will retain. Paragraph 30(b) has two subparts. Paragraph 30(b)(i) recites that Plaintiff will retain a checking account that had a de minimis balance. Paragraph 30(b)(ii) is very different and provides for Defendant to pay to Plaintiff amounts totaling $32,500. $2,500 was paid by Defendant upon execution of the Agreement and is no longer outstanding. Defendant defaulted in the payment of the first $10,000 installment of the remaining $30,000 and has not paid either of the later two $10,000 payments.

Paragraph 30(b)(ii) makes no mention of alimony or spousal support, but appears on the surface to resolve only equitable distribution claims.[8] This does not resolve the matter before me, however, because, as the Third Circuit has instructed, I must examine the language and substance of the Agreement in the context of the

---

[8]   Paragraph 30(a)(iii) makes Defendant responsible for arranging, at his financial expense, for their son to get braces. While such an obligation does not appear to involve equitable distribution, it also does not involve spousal support or alimony. Instead, it appears to be in the nature of child support, which has a neutral impact on my decision.

circumstances surrounding its creation to attempt to determine the parties' intent when

they executed the Agreement. <u>Gianakas</u>, 807 F.2d at 762.

The testimony of the parties predictably differed on their intent regarding the

$32,500 obligation under Paragraph 30(b)(ii). Plaintiff testified that the parties' sole

purpose and intent regarding the $32,500 was to provide her with support. Defendant

testified contrariwise that the sole purpose and intent of the parties regarding the $32,500

was to provide Plaintiff with her share of the equitable distribution of the marital assets.

Each of the parties' state court divorce counsel also testified during the trial. Their

testimony was telling. Both counsel testified that the $32,500 obligation created by

Paragraph 30(b)(ii) was intended to resolve all aspects of the parties' dispute. Although

the testimony of Plaintiff's state court divorce counsel was notably guarded and self-

serving, even he testified that the parties intended that the $32,500 obligation created by

Paragraph 30(b)(ii) "tied everything into one payment." FTR Audio Recording of

December 6, 2017 consolidated trial/hearing, at 12:25:38 – 59.

The testimony of Defendant's state court divorce counsel, however, was the

least self-serving and the most objective and convincing. He testified that the parties

intended that the $32,500 obligation created by Paragraph 30(b)(ii) of the Agreement

resolved all of the parties' differences in a global settlement. He further testified that the

parties' dispute involved issues of support and equitable distribution of the marital assets

and that each of these issues had value and were part of the $32,500 obligation provided

14

in Paragraph 30(b)(ii). The $32,500 obligation was intended to satisfy Plaintiff's claims for both equitable distribution and support. He also testified candidly that he could not attribute an exact percentage of the $32,500 to equitable distribution or support. Instead, it was a global resolution of all of the parties' disputes, without attempting to differentiate equitable distribution from support. FTR Audio Recording of December 6, 2017 consolidated trial/hearing, at 12:59:43 – 1:02:40; 1:08:53 – 1:09:42; 1:26:10 – 1:27:20.

The evidence shows that the parties did not discuss or even consider what percentage of the $32,500 was intended to satisfy Plaintiff's equitable distribution claims and what percentage was intended to satisfy her support claims. Instead, the intent of both parties and their counsel was to resolve both claims in one global settlement that culminated in the $32,500 obligation outlined in Paragraph 30(b)(ii).

I must next examine, according to Gianakas, the financial circumstances of the parties when they executed the Agreement on January 15, 2015. On that date, Plaintiff was employed as a teacher with the Allentown School District earning an annual salary of $45,000. Plaintiff obtained this position in November 2014. Prior to November 2014, she was earning considerably less by waitressing and working part-time jobs at Home Depot and at a day care facility.

Defendant was self-employed when the parties executed the Agreement on January 15, 2015. His tax return for the 2014 tax year showed that he earned $7,333 in

15

total income, but this return had not been completed by January 15, 2015. It was not

therefore considered by the parties when they negotiated the Agreement. Testimony

showed that the parties considered Defendant's 2013 income tax return, which showed

that Defendant earned total income of $49,239. $36,308 of the 2013 income was derived

from his business and $12,931 was from distribution of a 401(k) account that the parties

had received in 2013. Defendant also testified that his income for the 2012 tax year was

$58,000.

As of January 15, 2015, therefore, the parties had relatively similar earning

potential. It was, of course, impossible to predict with precision the amount that self-

employed Defendant would earn in future years. Similarly, it was difficult to predict if

Plaintiff, though gainfully employed, would continue in that position or advance in her

career.

I must also consider the extent of the marital assets and how they were

distributed under the Agreement. The marital assets consisted of (1) the marital residence,

which the parties agreed had equity of $90,000, and (2) the insulating spray business,

which was said to have no equity because a $74,000 judgment was allegedly outstanding

against it. Defendant failed, however, to introduce sufficient evidence, whether as an

exhibit or through testimony, to establish the lien and the value of the spray insulating

business. Defendant also presented no evidence to support his testimony that he had an

outstanding loan in the amount of $25,000. The Agreement awarded all of the marital

assets to Defendant. It also awarded to Defendant a pension plan (which Plaintiff agreed

had little value),[9] and provided that each party would retain their individual checking

accounts (both of which had de minimis balances) and the vehicles they were driving at

the time. Defendant had primary custody of the parties' children when the Agreement

was executed.[10]

    Finally, <u>Gianakas</u> instructs that I consider the function served by the $32,500

as of the date of the settlement. Plaintiff claims that the $32,500 served solely to provide

her with support; Defendant maintains that it served the sole function of equitably

distributing the marital assets. I find that the truth lies in between those absolutist

positions and was most accurately described by Defendant's state court divorce counsel.

The total $32,500 obligation was intended as a global settlement of both the equitable

distribution and the support claims. Because Defendant was awarded all of the marital

assets, some portion of the $32,500 obligation must be attributed to Plaintiff's equitable

distribution claim to the marital assets. The remaining portion of the $32,500 will be

attributed to support. The parties appeared to have relatively similar earning potential at

---

[9]     The pension plan referred to in Paragraph 30(a)(i) of the Agreement appears to be the
same 401(k) plan from which Defendant had withdrawn funds in 2013. See FTR Audio
Recording of December 6, 2017 consolidated trial/hearing, at 11:09:12 – 40.
[10]     Defendant's state court divorce counsel testified that prior to execution of the Agreement,
Defendant was paying Plaintiff alimony pendent lite in the amount of $800 per month and
Plaintiff was paying Defendant child support in the amount of $400 per month for a net payment
to Plaintiff of $400. These payments ceased upon execution of the Agreement.

the time they executed the Agreement and, critical to my determination, Defendant had

primary custody of the parties' children at the time the Agreement was executed.[11]

I find therefore that approximately one-third of the three $10,000 obligations

constitutes support and two-thirds constitutes equitable distribution.[12] $10,000 of the

$30,000 owed pursuant to Paragraph 30(b)(ii), therefore, is nondischargeable under

Section 523(a)(5) as a DSO and the remaining $20,000 is dischargeable as a property

settlement.

## 2. Obligation To Pay the $4,500 Attorney's Fees

Under Paragraph 2 of the July 1, 2016 Order, which is based on Paragraph

24 of the Agreement, Defendant is obliged to pay Plaintiff $4,500 in attorneys' fees.

Paragraph 24 of the Agreement requires that a breaching party pay the reasonable

attorneys' fees incurred by the non-breaching party in enforcing the Agreement. The state

court awarded $4,500 to Plaintiff as reimbursement for the attorneys' fees she incurred

---

[11]    Defendant's custody at the time the Agreement was executed is critical because of the obvious extra expenses engendered by caring for the parties' children.

[12]    I can point to nothing in the evidence that clearly and definitively establishes this one-third/two-thirds breakdown. Rather, I derived the split from "[t]he many other factors referred to by various courts [that] are merely elements of [the three primary] indicators." to which the Gianakas court referred. 917 F.2d at 762. I reviewed and weighed the three primary factors (and the various elements of income, expense, and need as described through this Opinion) and believe that my split is fair, and more importantly, that it is consistent with the facts and circumstances at the time of the creation and execution of the Agreement.

To a large extent, paraphrasing Justice Scalia in the article quoted by Judge Frank in footnote 7, supra, I am not so much pronouncing the law of what constitutes a DSO in the normal sense as I am engaging in the less exalted function of fact finding to determine what is a DSO.

enforcing the Agreement after Defendant failed to pay her the $20,000[13] that was due to her under Paragraph 30(b)(ii) of the Agreement. Because I have found above that one-third of the obligation created by Paragraph 30(b)(ii) was intended to be in the nature of support, I attribute the same fraction to the $4,500 attorneys' fee award to Plaintiff. One-third of the $4,500 attorneys' fee ($1,500) shall be considered as support and is therefore a nondischargeable DSO. The remaining two-thirds ($3,000) is dischargeable because it was incurred to protect Plaintiff's property settlement.

Plaintiff argues in her brief that she is entitled to an additional $18,000 in attorneys' fees, which she believes should be nondischargeable as a DSO. Plaintiff, however, made no prior request for additional attorneys' fees. Neither did she argue that such additional fees are nondischargeable. She filed no pleading and made no written or oral reservation of her rights during the consolidated trial/hearing. She also failed to present any evidence of additional attorneys' fees during the consolidated trial/hearing (although clearly she must have incurred some). Her request that I award additional attorneys' fees and find them nondischargeable must therefore be denied at this time without prejudice.

Finally, as I stated in footnote 4, <u>supra</u>, during the December 6, 2017 consolidated trial/hearing, Defendant conceded that his $20,000 obligation under

---

[13]    As noted previously, the third $10,000 payment was not yet due at the time of the July 1, 2016 Order.

Paragraph 33 of the Agreement and Paragraphs 4 and 5 of the July 1, 2016 Order, was

intended by the parties to be alimony. <u>See</u> FTR Audio Recording of December 6, 2017

consolidated trial/hearing, at 2:35:41-53; 2:36:01-07. As such, Defendant's obligation to

have paid $10,000 on January 15, 2018, and his obligation to pay $10,000 on January 15,

2019, are DSOs and are nondischargeable.

## B. <u>Defendant's Claim Objection</u>

The bar date for filing proofs of claim in Defendant's main bankruptcy case

was October 12, 2015. Defendant listed Plaintiff as a creditor on Schedule F and Plaintiff

clearly had actual notice of Defendant's bankruptcy case. But Plaintiff filed no claim

until October 6, 2016, almost a year late. On May 2, 2017, Defendant filed the Claim

Objection, alleging that Plaintiff's claim must be disallowed because it was not timely

filed. I agree.

Fed. R. Bankr. P. 3002(c) requires that a claim be filed in a Chapter 13 case

not later than 90 days after the first date set for the Section 341(a) meeting of creditors.

The first date set for the Section 341(a) meeting of creditors in this case was July 14,

2015. The Clerk of this Court therefore set October 12, 2015 as the deadline for filing

claims. Plaintiff failed to comply with this deadline and her claim was unquestionably

late. Defendant's Claim Objection must therefore be sustained and Plaintiff's claim must

be disallowed as untimely filed. <u>See</u> <u>In re Brooks</u>, 414 B.R. 65, 72 (Bankr. E.D. Pa.

2009)("the bar date in a Chapter 13 case is a strict and nonnegotioable deadline … ."); see also Bolyar v. Brownlee (In re Bolyar), Bankr. No. 08-10378SR, Adv. No. 08-00210, 2009 WL 2869938, at *3 (Bankr. E.D. Pa. March 12, 2009).

# IV. <u>CONCLUSION</u>

Based upon the above discussion of my findings of fact and conclusions of law:

(1) $31,500 of the total $54,500 debt owed by Defendant to Plaintiff will be declared to be a nondischargeable DSO under Section 523(a)(5);

(2) The remainder of the debt ($23,000) will be declared to be dischargeable because it is in the nature of a property settlement;

(3) I will enter judgment on the Adversary Proceeding partially in favor of Plaintiff and partially in favor of Defendant - $31,500 of the $54,500 debt owed by Defendant to Plaintiff is nondischargeable under Section 523(a)(5), and the balance is dischargeable;

(4) Plaintiff's claim was not timely filed;

(5) Defendant's Claim Objection will therefore be sustained and Plaintiff's claim will be disallowed; and

(6) Plaintiff's request for additional attorneys' fees will be denied without prejudice.

An appropriate Order follows.

Date: January 25, 2018

BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge